UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL MOTOR FREIGHT<br>    TRAFFIC ASSOCIATION, INC.<br>1001 North Fairfax Street, Suite 600<br>Alexandria, VA 22314-1798 | )<br>)<br>)<br>)<br>) |
| ABF FREIGHT SYSTEM, INC.<br>3801 Old Greenwood Rd<br>Fort Smith, AR 72903 | )<br>)<br>)<br>) |
| BED ROCK, INC.<br>  d/b/a Tri-State Motor Transit Co.<br>8147 E. 7th Street<br>Joplin, MO 64801 | )<br>)<br>)<br>)<br>) |
| T.F. BOYLE TRANSPORTATION, INC.<br>    d/b/a Boyle Transportation,<br>15 Riverhurst Road<br>Billerica, MA 01821 | )<br>)<br>)<br>)<br>) |
| NEW ENGLAND MOTOR FREIGHT, INC.<br>  d/b/a NEMF<br>1-71 North Avenue East<br>Elizabeth, NJ 07201 | )<br>)<br>)<br>)<br>) |
| YRC INC.<br>  d/b/a YRC Freight<br>10990 Roe Ave.<br>Overland Park, KS 66206 | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )  Case No. _____ |
| GENERAL SERVICES ADMINISTRATION,<br>One Constitution Square<br>1275 First Street, NE<br>Washington, DC 20417 | )<br>)<br>)<br>)<br>) |
| DANIEL TANGHERLINI, in his official capacity<br>  As Acting Administrator, GENERAL<br>  SERVICES ADMINISTRATION | )<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      This is an action challenging actions taken by the General Services

Administration ("GSA") in the course of post-payment audits conducted pursuant to 31 U.S.C. §

3726 of bills for motor carrier transportation services provided to various Government agencies.

## JURISDICTION

2.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331

(federal question); 28 U.S.C. § 1346(a)(2) (United States as defendant); and the Administrative

Procedure Act, 5 U.S.C. § 702 (right of review of agency action).  This Court also has

jurisdiction to grant a declaratory judgment and grant further necessary relief based upon that

judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue is appropriate in this district under 28 U.S.C. § 1391(b)&(e) in that this is a

civil action against an agency of the United States and officials thereof, acting in their official

capacity, and Defendants reside and a substantial part of the events giving rise to the claims

occurred within the judicial district of the United States District of Columbia.

## PARTIES

4.      Plaintiff National Motor Freight Traffic Association, Inc. ("NMFTA") is a

nonprofit membership organization headquartered in Alexandria, Virginia, whose membership

consists of motor carriers of freight and transportation companies operating in interstate,

intrastate, and foreign commerce. A significant segment of NMFTA's members provide cargo

transportation services for the United States government.

5.      Plaintiff ABF Freight System, Inc. ("ABF") is a motor carrier member of

NMFTA operating in interstate commerce throughout the United States and Canada.  A

significant portion of ABF's business involves the provision of cargo transportation services for the United States government.

6.      Plaintiff T.F. Boyle Transportation, Inc., d/b/a Boyle Transportation ("Boyle") is a motor carrier member of NMFTA operating in interstate commerce throughout the United States and Canada, specializing in the transport of security-sensitive cargo and highly hazardous materials. A significant portion of Boyle's business involves the provision of cargo transportation services for the United States government.

7.      Plaintiff New England Motor Freight, Inc., d/b/a NEMF ("NEMF") is a motor carrier member of NMFTA operating in interstate commerce throughout the United States and Canada.  A significant portion of NEMF's business involves the provision of general cargo transportation services for the United States government.

8.      Plaintiff Bed Rock, Inc., d/b/a Tri-State Motor Transit Co. ("Tri-State") is a motor carrier member of NMFTA operating in interstate commerce throughout the United States and Canada, specializing in the transport of security-sensitive cargo and highly hazardous materials. A significant portion of Tri-State's business involves the provision of cargo transportation services for the United States government.

9.      Plaintiff YRC Inc., d/b/a YRC Freight ("YRC") is a motor carrier member of NMFTA operating in interstate commerce throughout the United States and Canada.  A significant portion of YRC's business involves the provision of general cargo transportation services for the United States government.

10.      Defendant General Services Administration ("GSA") is an independent agency of the United States government, established to help manage and support the basic functioning of

-3-

federal agencies. Among its duties, GSA performs post-payment audits of certain transportation bills for services provided to other Government agencies.

11. Defendant Daniel Tangherlini is the Acting Administrator of GSA and he is sued in his official capacity.

## LEGAL FRAMEWORK

12. Historically, the rates and charges of interstate motor carriers were regulated by the former Interstate Commerce Commission ("ICC"), and those rates and charges were required to be set forth in published tariffs filed with the ICC that had the force and effect of law.

13. Although motor carriers were as a rule required to charge and shippers were obligated to pay the filed tariff rates and charges, carriers were always permitted to offer Government shippers rates that were discounted from those filed tariff rates.

14. A post-payment audit process, managed by GSA since the mid-1970s, was established to ensure that Government shippers paid the lowest applicable rate.

15. On January 1, 1996, Congress abolished the ICC and at the same time abolished the published tariff requirement for all transportation other than household goods and the noncontiguous domestic trade. 49 U.S.C. § 13702; 49 U.S.C. § 13710(a)(4). Consequently, outside of those two specialized areas of transportation, there was no longer tariff rates from which Government transportation rates and charges could be discounted.

16. The varied rates offered to Government shippers for all other cargo, like the varied rates offered to private customers, all became negotiated commercial rates.

17. The elimination of most tariff filing requirements, combined with technological computer advances, made it easier for Government shippers to access all relevant rate

-4-

information and promptly determine the accuracy of transportation bills. This led Congress in 1998 to impose a pre-payment audit obligation on the agencies actually receiving transportation services to verify the correctness of each bill and to pay the carrier based upon that timely audit without GSA's intervention, an obligation that ordinarily renders a post-payment audit unnecessary. 31 U.S.C. § 3726(a).

18.     Henceforth, GSA's post-payment audit responsibility for trucking industry bills invoiced under filed tariffs or at rates reduced from such filed tariffs was limited to the still-regulated rates for household goods and the noncontiguous domestic trade. 31 U.S.C. § 3726(d).

19.     With deregulation, Congress also modified the dispute resolution procedures applicable to transportation bills by adopting the requirement, now set forth in 49 U.S.C. § 13710(a)(3), that shippers must contest rate charges within 180 days of receipt of the bill.

BACKGROUND FACTS

20.     NMFTA includes among its members motor carriers that transport freight in interstate commerce for Government departments and agencies, and those shipments constitute a significant part of their business.

21.     The welfare and interests of those members are represented through NMFTA's Government Relations Committee ("GRC") that acts as a liaison with Federal Government agencies and executive departments and makes recommendations to the membership concerning all matters relating to the transportation of freight for, or on behalf of, the Federal Government. When deemed appropriate, the GRC may recommend that NMFTA initiate lawsuits on behalf of its Government contractor members.

22.     NMFTA's members recently reported that GSA was becoming more aggressive in

their post-payment audits of transportation bills for transportation services provided to Government shippers, and that Notices of Overcharge demanding refunds are commonly issued between 2 and 3 years after the Government was billed for the involved transportation services.

23.     The GRC found that the practice is contrary to applicable law and, with the approval of NMFTA's Board of Directors, determined that it should be challenged in court.

24.     ABF has been providing cargo transportation services to Government shippers for approximately 65 years. In three of the last four years, the number of overcharge notices increased substantially, with ABF receiving 1,483 in 2009 seeking more than $401,000, 2,662 in 2010 seeking more than $507,000, and 347 in 2012 seeking more than $27,000. On average, the Notices were issued nearly 3 years after receipt of the transportation bill by the Government.

25.     Boyle has been providing cargo transportation services to Government shippers for more than 40 years. In the past few years, the number of Notices of Overcharge received by Boyle increased substantially, with Boyle receiving 257 Notices seeking approximately $71,000 in 2010, 255 seeking approximately $186,000 in 2011, and 131 Notices of Overcharge seeking approximately $121,000 in 2012. The Notices were typically issued by GSA between two and three years after receipt of the transportation bill by the Government.

26.     NEMF provided cargo transportation services to Government shippers until the mid-1990s, when it withdrew from that market because of overcharge and payment issues that made the traffic unprofitable. Although NEMF reentered the Government transportation arena approximately 4 years ago on a very limited level, it has been reluctant to increase that presence because of concerns regarding possible payment issues, including overcharge issues arising out of GSA's post-payment audits.

27.    Tri-State is a member of NMFTA that has been providing cargo transportation services to Government shippers for approximately 75 years. Beginning in the last quarter of 2009, the number of Notices of Overcharge received by Tri-State increased substantially, with Tri-State receiving 27 Notices seeking over $12,000 in the last quarter of 2009, 524 Notices seeking approximately $160,000 in 2010, and 181 Notices seeking approximately $62,000 in 2011. GSA, without explanation, has withdrawn some of these Notices on multiple occasions. The Notices were typically issued by GSA between two and three years after receipt of the transportation bill by the Government.

28.    YRC is the result of a merger between Yellow Transportation, Inc. and Roadway Express, Inc., two large general cargo carriers that had been serving Government shippers for more than 30 years. In the past few years, the number of Notices of Overcharge received by YRC has increased substantially, with YRC receiving 2,310 Notices seeking approximately $600,000 in 2011 and 1,310 seeking approximately $418,000 in 2012. The Notices were typically issued by GSA between one and a half and two years after receipt of the transportation bill by the Government.

## COUNT I

## VIOLATION OF 31 U.S.C. 3726

29.    Pursuant to 49 U.S.C. § 3726(d), GSA is given three years to collect via administrative offsets overcharges identified in post-payment audits of transportation bills for services provided to the Government for shipments moving under a lawfully-filed tariff, rates subject to the jurisdiction of the Surface Transportation Board, or rates offered to the Government that are discounted from the filed tariff rates.

30.     The shipments underlying the Notices of Overcharge challenged here, that were issued to the individual carrier plaintiffs and other NMFTA members, involve Government freight moving at negotiated commercial rates that do not fall into the categories of freight still subject to GSA post-payment audits and offset pursuant to 31 U.S.C. § 3726.

31.     Because GSA acts contrary to law and exceeds its statutory authority under 31 U.S.C. § 3726 when it uses the post-payment audit procedures in that provision to issue Notices of Overcharge for freight moving under negotiated commercial rates and/or to offset the alleged overcharges from amounts subsequently owed to the involved carriers, the conduct should be held unlawful pursuant to the Administrative Procedure Act, 5 U.S.C. § 706.

### COUNT II

### VIOLATION OF 49 U.S.C. § 13710

32.     Notwithstanding the statutory elimination of the filed-tariff requirement for most cargo (49 U.S.C. § 13710(a)(4)) and the adoption and implementation of a pre-payment audit requirement (31 U.S.C. § 3726(a)), GSA has in the past few years substantially increased the number of Notices of Overcharge issued to motor carriers pursuant to post-payment audits of transportation bills.

33.     Notices of Overcharge are ordinarily sent to carriers more than one and a half and three years after the bill was originally received, verified by pre-payment audit for correctness, and paid by the Government.

34.     Pursuant to 49 U.S.C. § 13710(a)(3)(B), a shipper must contest a "bill within 180 days of receipt of the bill in order to have the right to collect the charges."

35.     The 180-day notice provision of 49 U.S.C. § 13710(a)(3)(B) is not superceded by

-8-

31 U.S.C. § 3726(d) for shipments no longer subject to tariff-filing requirements.

36.     GSA does not contest transportation bills in a timely fashion when it issues

Notices of Overcharge after the specified 180-day time period has expired and, therefore, may

not in those cases demand that the carrier refund the alleged overcharges or offset those amounts

against amounts subsequently due the carrier.  49 U.S.C.  § 13710(a)(3)(B).

37.     GSA's issuance of Notices of Overcharge more than 180 days of receipt of the

transportation bill is not in accordance with GSA's statutory authority under 49 U.S.C. §

13710(a)(3)(B) and the conduct should be held unlawful pursuant to the Administrative

Procedure Act, 5 U.S.C. § 706.

## COUNT III

## ALTERNATIVE VIOLATION OF 31 U.S.C. § 3726

38.     The three-year limitations period is mentioned in 31 U.S.C.§ 3726 only as the

time for carriers to challenge before the Administrator of GSA disputed transportation invoices

that cannot be resolved with the agency that received the services (§ 3726(c)) and as the time in

which the "Government may deduct from an amount subsequently due a carrier or freight

forwarder an amount paid on the bill than was greater than the rate allowed. . ." (§ 3726(d)).  No

timeframe is provided for notifying carriers of alleged overcharges.

39.     The same distinction is made in the regulations implementing Section 3726.  The

regulations provide that "A 3-year limitation applies on the deduction of overcharges from

amounts due a TSP (31 U.S.C. § 3726)..."  *See* 41 C.F.R. §§ 102-118.530 & 102.118.640(b).

However, no timeframe is provided for issuance of a Notice of Overcharge. *See* 41 C.F.R. §

102-118.435(f).

40.     The only statutory timeframe for advising carriers of overcharges is found in 49

U.S.C. § 13710(a)(3)(B), which requires a shipper to contest transportation charges within 180

days of receipt of the transportation bill.

41.  Read together, the statutes allow only 180 days for issuance of a Notice of

Overcharge and, if the carrier does not voluntarily refund the amounts found to be due, allow

GSA up to three years from the receipt of a bill to deduct the amounts due from amounts

subsequently owed to the involved carrier.

42.     Consequently, in the alternative, even if GSA could apply the audit processes of

31 U.S.C. § 3726 to freight that moves at commercial rates (a legal interpretation challenged in

Count I), it must issue the Notice of Overcharge within 180 days of receipt of the transportation

bill.

43.     Under this alternative reading of the statute, GSA's issuance of Notices of

Overcharge more than 180 days after the receipt of transportation bills is not in accordance with

law and is in excess of GSA's statutory authority under 31 U.S.C. § 3726, and should be held

unlawful in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(1) Declare that GSA has violated 31 U.S.C. § 3726 by using its post-payment audit

procedures to issue Notices of Overcharge for freight moving under negotiated commercial rates

and/or, based upon those Notices, to offset the alleged overcharges from amounts subsequently

owed to the involved carriers;

(2) Declare that GSA has violated 49 U.S.C.§ 13710(a)(3)(B) by issuing Notices of

Overcharge more than 180 days of receipt of the transportation bill and, based upon those untimely Notices, notifying carriers that the agency will deduct the overcharge from amounts subsequently due unless voluntarily refunded;

(3) Declare, in the alternative to items (1) and (2) of the Prayer for Relief, that GSA has violated 31 U.S.C. § 3726 by issuing Notices of Overcharge more than 180-days after receipt of the transportation bill because, while GSA may collect overcharges due the Government from subsequent transportation services for up to three years after receipt of the transportation bill, it has only 180 days from the date of receipt to notify the involved carrier of the overcharge;

(4) Permanently enjoin Defendants from issuing any Notices of Overcharge based on bills for transportation services more than 180 days after receipt of the bill;

(5) Order GSA to return funds improperly deducted from carrier compensation.

(6) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Claire Shapiro (D.C. Bar # 334201)
Eisen & Shapiro
10028 Woodhill Rd.
Bethesda, MD 20817
301-469-8590
claire@eisen-shapiro.com

John Bagileo (D.C. Bar # 14696)
Law Office of John R. Bagileo
15292 Callaway Court
Glenwood, MD 21738
(301) 404-8382
jmbagidell@msn.com