**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
NATIONAL MOTOR FREIGHT                  )
TRAFFIC ASSOCIATION, INC., *et al.*,    )
                                        )
                Plaintiffs,             )
                                        )
        v.                              )        Civil Action No. 13-0429 (ABJ)
                                        )
GENERAL SERVICES                        )
ADMINISTRATION, *et al.*,               )
                                        )
                Defendants.             )
_____)

## <u>MEMORANDUM OPINION</u>

Plaintiffs National Motor Freight Association, Inc. and five of its motor carrier members[1] (collectively, "plaintiffs") filed suit against defendants General Services Administration ("GSA") and Daniel M. Tangherlini, in his official capacity as the Acting Administrator, pursuant to 5 U.S.C. § 701 *et seq.*, arguing that GSA exceeded its statutory authority under 31 U.S.C. § 3726 and 49 U.S.C. § 13710 when it conducted post-payment audits and offset alleged overcharges against amounts due to some of the plaintiffs under their government contracts. Defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). *See generally* Defs.' Mot. to Dismiss Compl. ("Defs.' Mot.") [Dkt. # 11]. Defendants also argued that plaintiff New England Motor Freight should be dismissed for lack of standing. *Id.* at 27–28. Plaintiffs opposed the motion and argued that the Court should enter judgment on

---

1    The five motor carrier organizations that appear as individual plaintiffs in this case are ABF Freight System, Inc.; Tri-State Motor; T.F. Boyle Transportation, Inc.; New England Motor Freight, Inc.; and YRC Inc.

the pleadings in their favor instead pursuant to Rule 12(c).  Pls.' Resp. in Opp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") at 4 n.3 [Dkt. # 13].  Since the Court finds that it has concurrent subject matter jurisdiction in this case, and that plaintiffs have alleged sufficient facts to state plausible claims, the motion to dismiss will be denied.  But because the Court also finds that plaintiff New England Motor Freight has not alleged the necessary injury in fact, the Court will grant defendants' motion to dismiss its claims for lack of standing.  The rest of plaintiffs' claims may proceed, and the Court will address the merits of the dispute in accordance with the schedule set forth in the order that accompanies this opinion.

## BACKGROUND

### I.       Statutory and Regulatory Background

Five of the plaintiffs in this case are motor carriers that provide government agencies with transportation services pursuant to negotiable commercial rates.  This case concerns GSA's authority to conduct post-payment audits of their bills up to three years after the reviewed charges have been paid.  Defendants argue that 31 U.S.C. § 3726(b), (d) provides it with authority to conduct those audits.  Defs.' Mot. at 18–19.  Plaintiffs maintain that section 3726 does not cover transportation contracts performed at negotiable commercial rates, so any government review must be conducted pursuant to 49 U.S.C. § 13710, which requires that billing disputes be raised within 180 days.  Pls.' Resp. at 2.

### A.  31 U.S.C. § 3726 and 41 C.F.R. § 102-118.415 *et seq.*

Section 3726 of title 31 of the United States Code governs both pre- and post-payment audits of bills received by the government for transportation services.  31 U.S.C. § 3726(a), (b) (2006).  Most pertinent to this case is subsection (b), which provides that "[t]he Administrator [of General Services] may conduct pre- or post-payment audits of transportation bills of any

Federal Agency. The number and types of bills audited shall be based on the Administrator's judgment." *Id.* § 3726(b). If an audit reveals that the government overpaid for the services provided, the government may,

> [n]ot later than 3 years (excluding time of war) after the time a bill is paid, . . . deduct from an amount subsequently due a carrier or freight forwarder an amount paid on the bill that was greater than the rate allowed under— (1) a lawful tariff under title 49 or on file with the Secretary of Transportation with respect to foreign air transportation . . . , the Federal Maritime Commission, or a State transportation Authority; (2) a lawfully quoted rate subject to the jurisdiction of the Surface Transportation Board; or (3) sections 10721, 13712, and 15504 of title 49 or an equivalent arrangement or an exemption.

*Id.* § 3726(d). If the challenged transportation charges are not billed at a rate specified in one of the three subsections of section 3726(d), then GSA does not have authority under that section to withhold overcharges.

The statute does not detail the procedures that GSA must follow when reviewing agency transportation bills, and GSA has promulgated regulations establishing an audit procedure and appeals process. *See* 41 C.F.R. §§ 102-118.435, 102-118.600, 102-118.625, 102-118.650, 102-118.655 (2009). It also published questions and answers to provide additional guidance to government agencies that contract with motor carriers. *See generally* 41 C.F.R. §§ 102-118.5 *et seq.* Most pertinent to this case is section 102-118.435(f), which notes that, if the Audit Division discovers an overcharge, GSA will "[i]ssue a Notice of Overcharge stating that [the motor carrier] owes a debt to the agency" and include information regarding "the amount paid, the basis for the proper charge for the document reference number, and cit[ing] applicable tariff or tender along with other data relied on to support the overcharge." *Id.* § 102-118.435(f). The regulations do not require that the Notice of Overcharge ("NOC") be sent within a specific time period. *See generally id.*

### B. 49 U.S.C. § 13710

There is another statute with potential application to this case. Section 13710 of title 49 of the U.S. Code governs, among other things, billing disputes between motor carriers and shippers. 49 U.S.C. § 13710(a)(3) (2006). Specifically, it provides that, "[i]f a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the [Surface Transportation] Board determine whether the charges billed must be paid." *Id.* § 13710(a)(3)(B). The Board then reviews the reasonableness of the charged rates "under section 13701 . . . based on the record before it." *Id.* § 13710(a)(2). A shipper must raise a challenge to the transportation charges "within 180 days of receipt of the bill," otherwise its challenge is time-barred. *Id.* § 13710(a)(3)(B).

Although the statute does not specifically define "shipper" or elaborate upon the term, the statute has been applied to government agencies that contract for transportation services. The statute defines "motor carrier" as a motor carrier of property, "other than a motor carrier providing transportation in noncontiguous domestic trade." *Id.* § 13710(a)(1), (3)(A).

### II.     Factual and Procedural Background

Plaintiffs are five individual motor carriers and a trade association comprised of motor carriers. Compl. ¶¶ 4–9 [Dkt. # 1]. The membership organization, NMFTA, is a nonprofit entity "whose membership consists of motor carriers of freight and transportation companies operating in interstate, intrastate, and foreign commerce," many of which "provide cargo transportation services for the United States government." Compl. ¶ 4; *see also* Compl. ¶ 20. The other five plaintiffs are "motor carrier member[s] of NMFTA." Compl. ¶¶ 5–9. Like most NMFTA members, all five operate "in interstate commerce throughout the United States and Canada," Compl. ¶¶ 5–9, and four of the five motor carrier plaintiffs – ABF Freight, Boyle, Tri-State

Motor, and YRC – devote "[a] significant portion of [their] business [to] the provision of general cargo transportation services for the United States government."[2] Compl. ¶¶ 5–6, 8–9.

Recently, NMFTA members raised concerns with the organization regarding a perceived increase in the number of GSA "post-payment audits of transportation bills for transportation services provided to Government shippers." Compl. ¶ 22. The post-payment audits resulted in the issuance of thousands of NOCs, which demanded refunds of money "between 2 and 3 years after the Government was billed for the involved transportation services." Compl. ¶¶ 22–23. Specifically, the following overcharge notices were received approximately one to three years after the government received the transportation bills:

- <u>ABF Freight</u>:  In 2009, ABF Freight received 1,483 NOCs, totaling more than $401,000 in overcharges that it must repay.  In 2010, it received 2,662 NOCs, amounting to more than $507,000 in repayments.  And in 2012, it received 347 NOCs, seeking repayment of more than $27,000.  Compl. ¶ 24.

- <u>Boyle</u>:  In 2010, Boyle received 257 NOCs, totaling about $71,000 in overcharges that it must repay.  In 2011, it received 255 NOCs, amounting to approximately $186,000 in repayments.  And in 2012, it received 131 NOCs, seeking repayment of about $121,000. Compl. ¶ 25.

- <u>Tri-State Motor</u>:  In 2009, Tri-State Motor received 27 NOCs, totaling about $71,000 in overcharges that it must repay.   In 2010, it received 524 NOCs, amounting to approximately $160,000 in repayments.  And in 2011, it received 181 NOCs, seeking repayment of about $62,000.  Compl. ¶ 27.  Tri-State Motors also assert that "GSA, without explanation, has withdrawn some of these Notices on multiple occasions." Compl. ¶ 27.

- <u>YRC</u>:  In 2011, YRC received 2,310 NOCs, totaling about $600,000 in overcharges that it must repay.   And in 2012, it received 1,310 NOCs, seeking repayment of about $418,000.  Compl. ¶ 28.

2      The Complaint contains contradictory information about plaintiff New England Motor Freight.  In paragraph 7, it states that a significant portion of New England Motor Freight's business is connected to the government, Compl. ¶ 7, but in paragraph 26, it notes that New England Motor Freight stopped working with the government altogether in the mid-1990s and now only does business with the government on a "very limited level."  Compl. ¶ 26.

Plaintiff New England Motor Freight does not allege that it has been audited by the GSA or that it has received a NOC. Compl. ¶ 26. The complaint only notes that the company stopped contracting with the government in the mid-1990s because "overcharge and payment issues . . . made the traffic unprofitable." Compl. ¶ 26. Moreover, New England Motor Freight states that it now engages in government transport at "a very limited level," and that "it has been reluctant to increase that presence because of concerns regarding possible payment issues, including overcharge issues arising out of GSA's post-payment audits." Compl. ¶ 26.

On April 4, 2013, plaintiffs filed the instant lawsuit to press their claim that GSA acted unlawfully in issuing NOCs to ABF Freight, Boyle, Tri-State Motor, and YRC, as well as to NMFTA's other members. Count I asserts that GSA acted contrary to law and exceeded its statutory authority under 31 U.S.C. § 3726 when it invoked the post-payment audit procedures in that provision to issue overcharge notices to the four motor carriers in this case and other NMFTA members because the shipments covered by the NOCs involve Government freight moving at negotiated commercial rates and therefore "do not fall into the categories of freight still subject to GSA post-payment audits and offset pursuant to [section] 3726." Compl. ¶¶ 30–31. In Count II, plaintiffs allege that the overcharge notices were issued contrary to 49 U.S.C. § 13710, which requires a "shipper" to contest a transportation bill within 180 days of the bill's receipt. Compl. ¶¶ 32–37. And Count III, pled in the alternative, alleges that, to the extent that section 3726 does apply in this case, GSA acted unlawfully because the 180 day limit in section 13710 also applies, and GSA did not provide the four plaintiffs notice within that time period. Compl. ¶¶ 38–43.

Notably, plaintiffs do not dispute the accuracy of the overcharge notices. Pls.' Resp. at 15 ("[A]s previously explained, Plaintiffs here are not disagreeing with anything contained in

any particular notice of overcharge."). They only challenge GSA's authority to "audit . . . bills for services provided under negotiated commercial rates and . . . the long delayed issuance of overcharge notices." Pls.' Resp. at 15. They request a combination of declaratory and injunctive relief to prevent GSA from conducting post-payment audits under section 3726 and from issuing overcharge notices outside the 180 day period set by section 13710 in the future. Compl., Prayer for Relief, ¶¶ 1–4. They also request that this Court "[o]rder GSA to return funds improperly deducted from carrier compensation." Compl., Prayer for Relief, ¶ 5.

Defendants filed a motion to dismiss plaintiffs' complaint, arguing that this Court lacks subject matter jurisdiction and that jurisdiction instead lies with either the Civil Board of Contract Appeals ("CBCA") or with the Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491 (2012). Defs.' Mot. at 12–17. They also argue in the alternative that the complaint fails to state a claim upon which relief may be granted; according to defendants, GSA's authority under section 3726 extends to contracts involving negotiated commercial rates, and under that section and the accompanying regulations, the agency has up to three years after payment to issue a Notice of Overcharge and offset the overcharged amount.[3] *Id.* at 17–27. Defendants also moved to dismiss plaintiff New England Motor Freight's claim for lack of standing; it contends that the carrier has failed to allege an injury in fact or to establish causation and redressability because it does not allege that it received a NOC or that GSA has deducted overcharges from its current contracts. Defs.' Mot. at 27–28.

_____

3    For the same reason, defendants argue that, should this Court determine that it does not have subject matter jurisdiction over this matter, it should not transfer this case to the Court of Federal Claims because it would be futile as plaintiff's failed to state a claim upon which relief may be granted. Defs.' Reply Mem. in Supp. of Defs.' Mot. to Dismiss Compl. ("Defs.' Reply") at 11 n.9 [Dkt. # 15].

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.      Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other*

*grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**B.**     **Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679, quoting Fed. R. Civ. P. 8(a)(2).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 678, quoting *Twombly*, 550 U.S. at 555, and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id.*  In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp.

2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.** **The Court has subject matter jurisdiction in this case.**

Subject matter jurisdiction is a necessary predicate to an exercise of this Court's Article III power. *See Kokkonen*, 511 U.S. at 377. It is statutory in nature, and the party seeking federal judicial review must establish that it has satisfied at least one of the statutory bases. *See Lujan*, 504 U.S. at 561. Additionally, in cases like this one where the defendant is an agency of the United States of America, the plaintiff also bears the burden of establishing that the federal government has waived its sovereign immunity. *See Roum v. Bush*, 461 F. Supp. 2d 40, 46 (D.D.C. 2006).

Here, plaintiffs aver that the Court has subject matter jurisdiction over their three count complaint under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," because they are challenging actions taken by a federal government agency pursuant to two federal statutes: 31 U.S.C. § 3726 and 49 U.S.C. § 13710. Compl. ¶ 2; Pls.' Resp. at 10–11 & 11 n.5. In the alternative, they contend that, should this Court determine that this case is contractual in nature and therefore within the jurisdiction of the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. § 1491, this Court retains concurrent jurisdiction over the claims under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), because the amount of each disputed overcharge is "for an amount less than $10,000, usually significantly less." *See* Pls.' Resp. at 14. Plaintiffs point to section 702 of the APA and to the Little Tucker Act itself to establish a waiver of sovereign immunity. *See id.* at 11, 14.

**A. The Court does not have federal question subject matter jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702 in this case because the Tucker Act applies.**

Although all three counts in plaintiffs' complaint arise under federal law, 28 U.S.C. § 1331 cannot serve as the basis for the Court's jurisdiction in this case because when a case is filed against the United States, there must also be a waiver of sovereign immunity. The APA often serves as the necessary waiver of sovereign immunity, and it waives that immunity for any claim brought by an individual who "suffer[ed] legal wrong because of agency action, or [was] adversely affected or aggrieved by agency action." 5 U.S.C. § 702. But that waiver is not unlimited. *See* 5 U.S.C. §§ 702, 704; *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 892–93 (D.C. Cir. 1985); *Cartwright Int'l Van Lines, Inc. v. Doan*, 525 F. Supp. 2d 187, 194 (D.D.C. 2007) ("While it is true that the APA has 'broadened the avenues for judicial review of agency action,' this Court's jurisdiction is strictly limited by the terms of the APA itself."), quoting *Bowen v. Massachusetts*, 487 U.S. 879, 891–92 (1988). The waiver of immunity under the APA does not apply to cases where a party seeks monetary damages,[4] and Congress expressly "restricted section 702's waiver of sovereign immunity by stating that nothing in the APA 'confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Spectrum*, 764 F.2d at 892–93, quoting 5 U.S.C. § 702. Moreover, judicial review of an agency action under the APA is only appropriate when "there is no other adequate remedy in a court." 5 U.S.C. § 704.

---

[4] The parties dispute whether the APA's restriction on suits for monetary damages impacts jurisdiction in this case. But the Court need not reach that issue because, as discussed more fully below, this is a case "founded upon a contract" within the meaning of the Tucker Act but the amount in controversy is less than $10,000, which means this Court can grant monetary relief pursuant to its concurrent jurisdiction under the Little Tucker Act. *See Alaska Airlines, Inc. v. Johnson*, 8 F.3d 791, 797 (Fed. Cir. 1993).

The Tucker Act, 28 U.S.C. § 1491, acts as one of the limitations on section 702's waiver of sovereign immunity for cases that are "based on contracts with the federal government." *Spectrum*, 764 F.2d at 893; *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *Cartwright*, 525 F. Supp. 2d at 194. The Tucker Act also provides a limited waiver of sovereign immunity, but it vests exclusive jurisdiction over contract-based claims in excess of $10,000 against the federal government in the Court of Federal Claims. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *Cartwright*, 525 F. Supp. 2d at 194. Where "an action against the United States . . . is at its essence a contract claim," it "lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Megapulse*, 672 F.2d at 967. The APA does not permit a plaintiff to circumvent the Tucker Act and the jurisdiction of the Court of Federal Claims. *Spectrum*, 764 F.2d at 893; *Megapulse*, 672 F.2d at 967; *Cartwright*, 525 F. Supp. 2d at 194.

Here, defendants argue that this Court lacks subject matter jurisdiction because the APA does not apply and the case falls within the Tucker Act's grant of exclusive jurisdiction to the Court of Federal Claims. Plaintiffs argue that their case does not fall within the ambit of the Tucker Act because their three claims are not based on a contract within the meaning of that Act, and second, that even if the claims are based on a contract, the Court of Federal Claims cannot provide an adequate remedy in this case because it cannot grant declaratory or injunctive relief. The Court finds that the Tucker Act is implicated, but it need not reach the second question since it concludes that it has concurrent jurisdiction as well.

A case is not based on a contract within the meaning of the Tucker Act simply because the case "requir[es] some reference to or incorporation of a contract." *Megapulse*, 672 F.2d at 968. Instead, a court must look to "both . . . the source of the rights upon which the plaintiff

bases its claims, and upon the type of relief sought (or appropriate)" in order to determine if a claim is one "founded upon" a contract. *Cartwright*, 525 F. Supp. 2d at 194–95, quoting *Megapulse*, 672 F.2d at 959 (internal quotation marks omitted); *see also Spectrum*, 764 F.2d at 893. In conducting this inquiry, "[c]ourts have not hesitated to look beyond the pleadings of a case brought in district court to determine if it involves a claim over which the Court of [Federal] Claims has exclusive jurisdiction." *Megapulse*, 672 F.2d at 967.

In *Megapulse, Inc. v. Lewis*, the plaintiff filed suit to enjoin the U.S. Coast Guard from releasing technical data in order to protect the company's claimed proprietary interests in that data, and the government disputed the district court's subject matter jurisdiction. 672 F.2d at 962. The D.C. Circuit concluded that there was subject matter jurisdiction because the case was not based on a contract. The proprietary interests or rights at issue did not arise out of the contract; they were created by virtue of the company's work and research, making them wholly independent of the contract. *Id.* at 968–70. The contract's only relevance to the case arose in connection with one of the government's defenses, and therefore, the *Megapulse* court was "convinced that Megapulse's claims against the Government [were] not 'disguised' contract claims.'" *Id.* at 969.

But in a later case, *Spectrum Leasing Corp. v. United States*, the D.C. Circuit affirmed the district court's determination that it did not have subject matter jurisdiction either to issue an order declaring that GSA violated the Debt Collection Act when it returned Spectrum's invoices unpaid or to enjoin GSA from withholding the money due under the contract. 764 F.2d at 892–93. The court found that case to be based on a contract – and therefore within the Tucker Act – because the right to the money withheld was "created in the first instance by the contract, not by the Debt Collection Act," and because Spectrum sought an order compelling the government to

pay money owed in exchange for goods procured under a contract.  *Id.* at 894.  Thus, the Court

of Appeals found *Spectrum* to be distinguishable from *Megapulse*.

It also focused on the differences between the remedies being requested in the two cases:

> Unlike *Megapulse*, in which the plaintiff sought an order enjoining the dissemination of information in which it had an extra-contractual proprietary interest, Spectrum seeks an order compelling the government to pay money owed in exchange for goods procured under an executory contract.  In other words, Spectrum seeks the classic contractual remedy of specific performance.

*Spectrum*, 764 F.2d at 894.

Here, plaintiffs' case is more akin to *Spectrum* than to *Megapulse*.  As in *Spectrum*, the

plaintiffs' rights in this case are contractual in origin.  All three counts of the complaint allege

that GSA acted unlawfully when it audited bills submitted to the government pursuant to

transportation contracts, and plaintiffs demand a return of money withheld under other contracts.

They also seek an order prohibiting interference with future payments due for services performed

pursuant to shipping contracts.  In other words, plaintiffs' claims – although couched in terms of

GSA's authority to conduct post-payment audits – are at bottom a request to be made whole

under a series of government contracts, both right now and in the future.  *See* Compl., Prayer for

Relief, ¶¶ 1–5.  Neither section 3726 nor some independent act of plaintiffs establishes the right

to payment from the government; instead, that right arises "only upon creation and satisfaction of

[their] contract[s] with the government."[5] *Spectrum*, 764 F.2d at 894; *see also Cartwright*, 525 F. Supp. 2d at 195 ("Plaintiffs' right to any payment from the government at all, whether in full as charged, or in a lesser amount reduced by offset, is created in the first instance by their contracts, not by GSA's regulations.").

Moreover, a review of the complaint reveals that, fundamentally, this is an action for monetary relief. The complaint is replete with references to money withheld by GSA, Compl. ¶¶ 22, 24–28, 31, and in their prayer for relief, plaintiffs explicitly request that this Court "[o]rder GSA to return funds improperly deducted from carrier compensation."[6] *Id.*, Prayer for Relief, ¶ 5.

The fact that plaintiffs make other requests does not alter the conclusion that this is a case based on contract. Although plaintiffs describe their claims in declaratory and injunctive terms, a plaintiff may not "avoid the jurisdictional (and hence remedial) restrictions of the Tucker Act by casting its pleadings in terms that would enable a district court to exercise jurisdiction under a separate statute and enlarged waivers of sovereign immunity, as under the APA." *Megapulse*, 672 F.2d at 967. Plaintiffs' request for declaratory and injunctive relief simply asks this Court to

---

5    Plaintiffs point to *Alaska Airlines, Inc. v. Austin*, 801 F. Supp. 760 (D.D.C. 1992), in support of its argument that its claims are not contractual in nature. But, in addition to being not binding on this Court, that case provides little guidance on whether plaintiffs' claims are founded upon a contract. Unlike in this case, the complaint in *Austin* included separate counts alleging unlawful government conduct and claims for monetary relief, and the court conducted its jurisdictional inquiry in the isolated context of each count without looking behind the pleadings to see what the case was really about. *See* 801 F. Supp. at 762–64. The court also made only limited effort to distinguish precedent that is binding on this district, such as *Spectrum* and *Megapulse*. *Id.* As a result, this Court respectfully declines to follow *Austin* on the question of whether the claims in this case are founded upon a contract.

6    For this reason, the Court rejects plaintiffs' contention that the thrust of their complaint is about defining GSA's power under section 3726, and that it is not about recouping withheld funds or preventing funds from being withheld in the future. *See* Pls.' Resp. at 10–11.

tell GSA that it may not interfere with plaintiffs' contractually secured rights to payments in the future, and they are accompanied by an unequivocal request for what has been withheld in the past. Although the equitable claims are not a request for monetary "damages" as that term is typically used, *see Bowen*, 487 U.S. at 893, the underlying implication of the relief obtained is the protection of a right to money that is secured by contract. *See Cartwright*, 525 F. Supp. 2d at 195. Thus, plaintiffs seek "contractual remed[ies]" that would prevent an unlawful interference with plaintiffs' contractual rights. *See Spectrum*, 764 F.2d at 894–95 (finding that Spectrum's requested relief was contractual in nature even though the company also requested a declaration that the government had violated the Debt Collector Act); *Cartwright*, 525 F. Supp. 2d at 195. For all these reasons, the Court finds this to be a case that is founded upon a contract within the meaning of the Tucker Act and that jurisdiction lies in the Court of Federal Claims.[7]

### B. This Court has concurrent jurisdiction under the Little Tucker Act.

A finding that the Tucker Act applies does not end this Court's jurisdictional inquiry. Although the Tucker Act provides exclusive jurisdiction to the Court of Federal Claims for claims of monetary relief against the United States in excess of $10,000, the Little Tucker Act, 28 U.S.C. § 1346 (2012), provides federal district courts with original jurisdiction, concurrent with the Court of Federal Claims, over any "civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). Consequently, a plaintiff's contract claim against the United

---

[7]     Plaintiffs also challenged the adequacy of the relief available in the Court of Federal Claims, Pls.' Resp. at 15–16, but at least one other court in this jurisdiction has found the remedies available in that court to be adequate. *See Cartwright*, 525 F. Supp. 2d at 196–97. In this case, the Court need not reach that question because it will exercise its concurrent jurisdiction to hear the case.

States may be heard in federal district court so long as the amount of the claim does not exceed $10,000. *Id.*; *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 179 (D.D.C. 2007).

Here, the Court finds that plaintiffs' claims fall well within the $10,000 limit. Although their complaint alleges that hundreds of thousands of dollars have been improperly withheld from them by GSA, *see* Compl. ¶¶ 24–25, 27–28, the Court finds it inappropriate to aggregate the overcharge assessments when calculating the amount in controversy for purposes of determining whether there is subject matter jurisdiction in this case. *See Austin*, 801 F. Supp. at 762 (noting that the airline tickets giving rise to the contested overcharges were individual contracts and that the amount in controversy should be analyzed by viewing each ticket independently).

The contracts at issue here – known as bills of lading – are a series of individual contracts in which motor carriers agreed to provide transportation services for particular shipments to a government agency. Pls.' Notice of Filing in Resp. to Jan. 10, 2014 Minute Order ("Pls.' Not.") at 2–3 [Dkt. # 20]; Decl. of George Thomas, Ex. 1 to Defs.' Notice of Filing ¶¶ 4–5 [Dkt. # 19-1]. There is no larger, overarching contract at play: each bill of lading covers a specified transaction, results in its own invoice, and is the product of an offer of tender, which sets the price at which the carrier is willing to provide the requested transportation services. Decl. of David Bennett, Ex. 1 to Pls.' Not. ¶¶ 3, 6–7 [Dkt. # 20-1]; Decl. of Marc Boyle, Ex. 2 to Pls.' Not. ¶¶ 3, 6–7 [Dkt. # 20-2]; Decl. of Mark Johnson, Ex. 3 to Pls.' Not. ¶¶ 3, 6–7 [Dkt. # 20-3]; Decl. of Danny Loe, Ex. 4 to Pls.' Not. ¶¶ 3, 6–7 [Dkt. # 20-4]. It is those individual contracts that have been subjected to GSA's post-payment audit.

Here, plaintiffs claim to have suffered multiple distinct wrongs connected to individual contracts, and they have filed suit to recover funds that were withheld from those separate

contracts. Under these circumstances, it is the Court's view that the aggregate amount sought in the complaint is not the appropriate measure for deciding whether there is subject matter jurisdiction under the Little Tucker Act, and that the Court must look to the amount of overcharge noticed in connection with each of the audited contracts. *Austin*, 801 F. Supp. at 762. As plaintiffs' supplemental filings make clear, none of the individual overcharges that prompted this action exceed $10,000. Decl. of Bennett ¶ 9 (noting overcharges between $13.72 and $995.19); Decl. of Boyle ¶ 9 (noting overcharges between $14.42 and $8,144.46); Decl. of Johnson ¶ 10 (noting overcharges between $4.94 and $7,025.51; Decl. of Loe ¶ 9 (noting overcharges of $0.73 and $4,085.89). Consequently, this Court has concurrent jurisdiction with the Court of Federal Claims over this case under the Little Tucker Act, and it finds that dismissal for lack of subject matter jurisdiction is therefore unwarranted.

## II. Plaintiffs' complaint provides sufficient facts to state a claim upon which relief may be granted.

Defendants also argue that plaintiffs' complaint should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the facts as alleged demonstrate that plaintiffs are not entitled to relief as a matter of law. Defs.' Mot. at 17–27. Specifically, defendants contend that the complaint demonstrates that plaintiffs' transportation services fall within the purview of section 3726, and that GSA lawfully notified plaintiffs of overcharges within the three year statutory period. *Id.*

But this is not a case that can properly be resolved under Rule 12(b)(6). The complaint states a plausible claim for relief that turns on two questions: first, whether section 3726 applies to contracts of motor carriers that provide transportation under negotiated rates, and second, whether Congress intended the time limitations contained in section 13710 to apply to section 3726. Both of these issues present questions of law, and neither can be resolved simply by

referring to the operative statutes and plaintiffs' complaint, so Federal Rule of Civil Procedure 56 will provide the proper framework. Defendants' motion to dismiss pursuant to Rule 12(b)(6) will therefore be denied without prejudice, and for the same reason, the Court will not grant plaintiffs' request that these motions be treated as a motion for judgment on the pleadings. *See Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001) (noting that "[t]he standard of review for . . . a motion [for judgment on the pleadings] is essentially the same as the standard for a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)"). A schedule for further briefing shall be set out in the order that accompanies this memorandum opinion.

### III.    Plaintiff New England Motor Freight does not have standing in this case.

Defendants' final argument in its motion to dismiss is that plaintiff New England Motor Freight does not have standing in this case. Defs.' Mot. at 27–28. Specifically, defendants argue that New England lacks a cognizable injury because it does not identify any alleged untimely overcharge notice and instead states only that it has been reluctant to increase the amount of business it conducts with the government because of the potential that it will receive overcharge notices in the future. *Id.*, citing Compl. ¶ 26. Defendants also argue that plaintiff New England Motor Freight cannot establish the causation and redressability prongs of standing. *Id.* at 28. The Court agrees.

To establish constitutional standing, a plaintiff must demonstrate that (1) he has suffered an "injury-in-fact" that is "concrete and particularized" and "actual or imminent"; (2) the injury is "fairly traceable" to the challenged action of the defendant; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted); *see also*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000). The party

invoking federal jurisdiction bears the burden of establishing standing. *Lujan*, 504 U.S. at 561.

Here, plaintiff New England Motor Freight alleges that it has declined to increase the

amount of business it does with government agencies out of fear that future audits could ruin its

business. Compl. ¶ 26; *see also* Pls.' Resp. at 30–31. But plaintiff fails to allege facts that

would show that injury to be concrete and particularized or actual or imminent, and the

company's concern that it could be issued a notice of overcharge is merely speculative at this

time.[8] The fact that plaintiff has engaged in some business with the government over the last

four years and has not yet received a notice of overcharge at the time this case was filed only

strengthens that conclusion. The Court finds that plaintiff New England Motor Freight has not

established that it has suffered a cognizable injury and it therefore does not have standing in this

case.[9]

---

8       For this reason, plaintiffs' reliance on *North Carolina Right to Life Committee Fund for Independent Political Expenditures v. Leake*, 524 F.3d 427 (4th Cir. 2008), is misplaced. That case dealt with a challenge to North Carolina's campaign financing law that provided matching funds to a participating candidate when his or her opponent spent more than the amount specified in the statute. *Id.* at 433. Although certain plaintiffs had not actually made payments to political candidates for fear of triggering the matching funds provision, the court found that they nonetheless had suffered an injury in fact because "'conditional statements' of intent, which allege that a plaintiff would engage in a course of conduct but for the defendants' allegedly illegal action, may be sufficient" to establish the injury prong of standing. *Id.* at 435. But that case is distinguishable from the instant case: If the plaintiffs in *Leake* had funded political candidates as they intended, the matching funds provision would have automatically been triggered and their injury would be concrete. But here, one cannot be certain that overcharge notices and withholdings would necessarily flow from New England's decision to engage in government contracting.

9       Because a plaintiff must establish all three prongs of standing to avoid dismissal on that ground, the Court need to address whether plaintiff New England Motor Freight can satisfy the second two prongs of the standing inquiry. *See Lujan*, 504 U.S. at 560–61.

## CONCLUSION

For the reasons stated above, the Court finds that it has concurrent jurisdiction over this case pursuant to the Little Tucker Act and that plaintiffs' complaint states a plausible claim for relief with respect to GSA's post-payment audits. Additionally, the Court finds that plaintiff New England Motor Freight does not have standing in this case, and its claim will be dismissed. The Court will therefore grant in part and deny in part defendants' motion to dismiss.

Furthermore, as the dispute in this case turns on questions of law and statutory interpretation, the Court's order accompanying this opinion will set a schedule for the filing of summary judgment motions. The parties may choose to rely upon the memoranda of points and authorities that have already been filed in support of those motions. A separate order will issue.



AMY BERMAN JACKSON
United States District Judge


DATE: March 12, 2014